No. 20,668.

THE LUDOWICI-CELADON COMPANY, *Appellant,* v. THE COFFEY-
VILLE GAS & FUEL COMPANY, *Appellee.*

### SYLLABUS BY THE COURT.

CONTRACT—*Supply Gas—False Representations—Petition States Cause
of Action.* The petition examined and held to state a cause of action
for damages for fraudulent representations.

Appeal from Montgomery district court; THOMAS J. FLAN-
NELLY, judge. Opinion filed February 10, 1917. Reversed.

*George Campbell,* and *Charles D. Welch,* both of Coffeyville,
for the appellant.

*Charles Bucher,* and *W. E. Ziegler,* both of Coffeyville, for
the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for fraudulent
representations. A demurrer was sustained to the petition,
and the plaintiff appeals.

The petition is too long to be printed here, and no useful
purpose would be subserved by printing it, or even by indicat-
ing all its features.

The plaintiff manufactures and sells roofing tile, and needs
natural gas in its business. The defendant sells natural gas.
They entered into a contract whereby the defendant agreed
to supply the plaintiff with natural gas in sufficient quantities
for all purposes legitimately required in the operation of its
factory and additions thereto, at the price of three cents per
thousand feet for a period of five years, and then at the price
of four cents per thousand feet for another year. The plain-
tiff agreed to use the gas so supplied and to use all the gas
essential for the conduct of its business. The price agreed on
was offered by the defendant as an incentive to increase the
plaintiff's consumption of gas, and the plaintiff did enlarge
and rebuild its plant, at an expense of $100,000, in consider-
ation of the price offered. The contract was made in Janu-
ary, 1909. In the year 1911 the defendant entered into a con-
spiracy with the Kansas Natural Gas Company to raise the

price of gas. The defendant falsely and fraudulently represented to the plaintiff that the supply of natural gas at the defendant's command was inadequate to meet the needs of the plaintiff's factory, that the supply of natural gas was rapidly approaching exhaustion, and that no other supply was available. These representations continued over a considerable period of time, were known by the defendant to be false, and were believed by the plaintiff, who was ignorant of their falsity. The plaintiff's situation was serious. It had customers whom it was under contract to supply with large quantities of its product. It had large numbers of workmen in its employ. It had a valuable plant, which could not be put to other uses, and its very existence as a business enterprise was threatened. The defendant purposely and wrongfully reduced the supply of gas which it was furnishing, and by pressing its false representations on the plaintiff, and fraudulently promising a better supply for a short time only, the defendant induced the plaintiff to surrender its contract and to accept a new one for gas at the price of seven cents per thousand feet; the new contract, however, to be terminable by the defendant on thirty days' notice. Incidentally to its representation that the supply of gas was practically exhausted, the defendant advised the plaintiff to install oil burners, which it did at great expense, believing gas was no longer available for factory purposes. The defendant had no intention of bettering the supply of gas under the second contract, did not do so, and in September, 1912, terminated the second contract. Thereafter, the defendant charged the plaintiff twenty cents per thousand feet for gas. The price was prohibitive, and in January, 1913, the plaintiff instituted an independent investigation of the gas supply. It found not only that gas was abundant, but that the defendant owned and controlled and had access to immense unused supplies. The details of the relations of the defendant to the Kansas Natural Gas Company and of the conspiracy between them, whereby the Kansas Natural Gas Company obtained a monopoly of gas production and was enabled to raise and to dictate the price of gas, were set out. Items of damage were pleaded to the amount of $79,500.

The petition stated a cause of action, and the demurrer was wrongfully sustained. In its brief the defendant says the

plaintiff was on the ground and knew the prevailing conditions with reference to the gas supply. The statement should be made in an answer. The petition discloses information which the plaintiff received from the defendant, but the petition alleges the information did not accord with the facts. The defendant says that if it had been anxious to secure a new contract, and intended to deceive the plaintiff, it would not have impressed on the plaintiff the fact that the benefits under the second contract would be temporary only. This argument should be made to the jury that tries the case. The defendant says the plaintiff voluntarily surrendered the old contract, voluntarily accepted the new one, and was not misled or defrauded. The petition very distinctly declares otherwise. The defendant says the plaintiff ought to have procured gas elsewhere to mitigate its damages, which is to say, the plaintiff ought not to have believed and relied on the representations of the defendant that other gas was not obtainable. The defendant says its advice to install oil burners is not actionable. The plaintiff does not sue for the consequences of bad advice. It sues for false representations that the gas supply was exhausted, whereby it was wrongfully induced to expend money to keep its plant going, one of the measures adopted being the installation of oil burners on the recommendation of the defendant. If this were not true the petition as a whole would not be demurrable because one item of the damages claimed is not recoverable. The defendant says conspiracy was not well pleaded. It was well enough pleaded to require an answer.

The judgment of the district court is reversed and the cause is remanded with direction to overrule the demurrer to the petition.